Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| NORTH EAST ASSET CORPORATION REPRESENTADO POR ASTRID DÍAZ<br><br>Recurrido<br><br>V.<br><br>JUNTA DE DIRECTORES CONDOMINIO RÍO MAR II; CONSEJO DE TITULARES; MICHELLE ROBLES ADMINISTRADORA<br><br>Recurrentes | KLRA202400600 | Revisión procedente del Departamento de Asuntos del Consumidor, Región de Mayagüez<br><br>Caso Núm.:<br>C-SAN-2022-0011967<br><br>Sobre:<br>Ley de Condominios de Puerto Rico |

Panel integrado por su presidente, el Juez Rodríguez Casillas, Juez Marrero Guerrero y Juez Campos Pérez.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de enero de 2025.

Comparece el Consejo de Titulares del Condominio Río Mar II (Consejo de Titulares o parte recurrente) y nos solicita revisar una *Resolución* emitida el 27 de agosto de 2024 por el Departamento de Asuntos del Consumidor de Puerto Rico (DACo).[1] En su virtud, el DACo determinó que el Consejo de Titulares causó daños a North East Assets Corporation, representada por la señora Astrid Díaz Vega (North East o parte recurrida) al incumplir con su obligación de reparar oportunamente el colapso del sistema de desagüe del apartamento de la parte recurrida. Por ello, ordenó al Consejo de Titulares el pago de $91,684.24 por concepto de daños y $3,000 por los honorarios de abogados.

---

[1] Apéndice del *Recurso de Apelación,* Anejo 19, págs. 265-285. Archivada el 27 de agosto de 2024.

Por los fundamentos que expondremos, se adelanta la desestimación del recurso por haber sido presentado prematuramente.

Veamos el trasfondo fáctico y procesal que sostiene nuestra determinación.

**I.**

La controversia ante nuestra consideración se originó el 27 de junio de 2022, cuando North East presentó una *Querella* contra el Consejo de Titulares y la Junta de Directores.[2] En esta, alegó ser propietaria de un apartamento ubicado en el primer piso de un edificio del Cluster 2 Wyndham Grand Río Mar Resort en Río Grande, Puerto Rico. La parte recurrida arguyó que en septiembre de 2019, encontró su apartamento inundado debido a que el único sistema de desagüe estaba inoperante. Asimismo, esgrimió que realizó múltiples solicitudes tanto a la Junta como a la Administración del Condominio Río Mar II para resolver permanentemente la inundación en su apartamento, el cual se afectó y siempre estaba en riesgo de inundarse, particularmente durante la temporada de huracanes.

Específicamente, North East adujo que el 23 de septiembre de 2019 envió una carta al Consejo de Titulares, en la que indicó que el colapso del sistema de desagüe provocó inundaciones en su apartamento. A su vez, enfatizó que el 7 de octubre de 2019, cursó una segunda carta en la que comunicó que el problema del exceso de aguas pluviales en su apartamento persistía; que el hongo y la humedad afectaban su propiedad, y que ante el aviso de la tormenta Karen, la Administración solamente colocó unos sacos de arena en la entrada del apartamento que no evitaron la inundación y dificultaron el acceso al mismo. Por ello, solicitó varios remedios, entre estos la limpieza del apartamento; reparación por los daños sufridos, y

---

[2] *Íd.*, Anejo 1, págs. 1-60.

colocar una bomba de agua para sacar temporalmente el agua acumulada. North East sostuvo que, en igual fecha, la Administradora respondió que un plomero acudió al área y determinó que la tubería colapsó y se necesitaba reemplazar el tubo, cuyo costo era $8,750.00. Según la Administradora, una segunda opinión reveló que la tubería no colapsó, sino que se aplastó, lo que implicaba un trabajo muy complejo. Adicionalmente, North East adujo que la Administradora apuntó que intentó contratar un ingeniero y conseguir el equipo para corregir el problema de las tuberías.

Sin embargo, la parte recurrida destacó que la solución temporera le continuaba afectando, por lo que el 24 de junio de 2020, presentó otra carta en solicitud de una solución permanente al problema. North East particularizó que contrató a Ambientaliz, un perito especialista en arquitectura y evaluaciones de daños a estructuras que inspeccionó el apartamento y generó un Informe de Daños con la siguiente información:

a. La entrada se inunda debido a que el sistema de drenaje [es] inservible.
b. El drenaje es de cuatro pulgadas y no es apto para la cantidad de agua que cae y se acumula en la entrada. Además, la apertura del drenaje es pequeña y se tapa fácilmente.
c. No existen drenajes adicionales para ayudar al drenaje principal.
d. Se recomienda que se descarte el drenaje comunal y se instale un nuevo drenaje independiente a través del balcón. Esto va a requerir la remoción de las losetas de piso y la preparación de una capa impermeabilizadora antes de la nueva instalación de las losas por estar el apartamento a nivel "tierra".
e. Se debe nivelar el drenaje y alejarlo del apartamento.
f. Se sugiere que se instale un segundo drenaje.
g. Se debe instalar un techo en la entrada para prevenir la cantidad de agua de lluvia que entra al lugar.
h. Se debe resolver inmediatamente para prevenir los daños causados por el moho, los hongos y la humedad dentro del apartamento.
i. Las filtraciones de agua que ocurren cuando llueve han afectado los gabinetes y paredes del apartamento.
j. Otros daños que se observaron fueron: manchas de agua en las paredes de concreto, las ventanas de madera afectadas por las filtraciones de agua, puertas de madera delaminadas, losetas con manchas y olor a humedad, manchas de filtraciones en el techo, entre otros.
k. Estima la reparación de los daños en $53,635.00.

North East arguyó que, al momento de presentar la *Querella*, la parte recurrente no había respondido a sus llamados de auxilio. Además, concibió que la inacción del Consejo de Titulares en resolver el problema de manera permanente resultó en su perjuicio económico y en la reducción en el valor de su propiedad. Asimismo, puntualizó que la parte recurrente carecía de un plan de emergencias para el Condominio Río Mar II y para atender su problema ante un evento atmosférico. North East esbozó que se encontraba en estado de pánico, ansiedad e indefensión al contar con una solución temporera, más que estaba a la merced de apagones, ya que la bomba de agua operaba con electricidad y una batería de capacidad limitada. Por ello, solicitó que se ordenara al Consejo de Titulares reparar el único sistema de desagüe de su apartamento de manera urgente y permanente; independizar dicho sistema de desagüe; construir un techo para proteger la propiedad del exceso de aguas pluviales; reparar el piso con losas nuevas y el desnivel de este; informar el plan de emergencia ante una temporada de huracanes, e indemnizar por los gastos incurridos y los daños sufridos por su inacción.

El 19 de diciembre de 2023, el Consejo de Titulares contestó la *Querella*.[3] Entre otros asuntos, alegó que respondió las cartas del 23 de septiembre de 2019 y del 7 de octubre de 2019, aparte que el ingeniero Javier Rodríguez Mejías inspeccionó el apartamento de North East. La parte recurrente expuso que, a raíz de la referida inspección, el 2 de abril de 2020, envió una carta a North East para informarle que los daños reclamados no eran responsabilidad del Condominio, por lo que se le denegó la cubierta del seguro comunal. Además, planteó que el 28 de abril de 2021, el ingeniero Joaquín A. Peña Ríos envió una carta a la parte recurrida para explicarle que los daños reclamados fueron ocasionados por unas filtraciones de agua

---

[3] *Íd.*, Anejo 4, págs. 70-85.

y que su apartamento no sufrió un impacto directo que ocasionara la ruptura de cristales, puertas y/o ventanas. Ante ello, apuntó que los daños reclamados por North East no eran producto del desagüe, sino del huracán María, los cuales se atendieron oportunamente mediante la inspección de ingenieros estructurales y otros profesionales. Por otra parte, el Consejo de Titulares subrayó que instaló dos (2) sistemas de bombeo que extraían el agua de la entrada del apartamento de North East: uno conectado a la red eléctrica y otro conectado a una batería para que funcione en caso de interrumpirse el servicio de energía eléctrica. A su vez, arguyó que la parte recurrida mantuvo rentando la propiedad a corto plazo durante todo el año.

Tras la celebración de varias vistas administrativas, el DACo emitió una *Resolución*.[4] El foro administrativo concluyó que North East demostró que el Consejo de Titulares actuó negligentemente al incumplir con su obligación de reparar oportunamente el desagüe, por lo que le causó daños. Asimismo, consignó que el sistema pluvial era un elemento común necesario, conforme con la Escritura Matriz y la *Ley de Condominios de Puerto Rico*, Ley Núm. 129-2020, 31 LPRA sec. 1921 *et seq.*, por lo que le correspondía a la parte recurrente reparar dicho sistema para prevenir las filtraciones de agua e inundaciones. Ante ello, el DACo estableció que en vista que el Consejo de Titulares no reparó el desagüe colapsado hasta después de cuatro (4) años de North East peticionarlo, dicha parte sufrió daños estructurales en su apartamento y pertenencias.

A tenor con lo anterior, el DACo ordenó que el Consejo de Titulares y Río Mar Condominium II Association le pagaran a North East la suma de $91,684.24 por concepto de daños y $3,000.00 de honorarios de abogados, así como el interés legal desde que se ordenó el pago hasta que el mismo fuese satisfecho.

---

[4] *Íd.*, Anejo 19, págs. 265-285. Archivada el 27 de agosto de 2024.

Inconforme, el 11 de septiembre de 2024, el Consejo de Titulares presentó una *Moción en solicitud de reconsideración* ante el DACo.[5] En síntesis, peticionó reconsiderar las determinaciones de hechos número 18 a la 24 y 30 a la 42, al entender que el foro administrativo incluyó partidas en la valoración de los daños ocasionados por el huracán María. Por otro lado, sostuvo que los arquitectos Víctor Vega Sanabria y Ángel Casto Pérez Vega no sustentaron sus informes periciales con cotizaciones o tasaciones para cuantificar los daños reclamados, por lo que estuvieron basado en hechos o información insuficiente. A su vez, pormenorizó que el DACo debía reconsiderar las determinaciones de hecho número 48 y 49, toda vez que no actuó negligente ni temerariamente al no desembolsar la cantidad solicitada por North East, sino que actuó de manera fundamentada para proteger el Condominio. Del mismo modo, solicitó que el foro administrativo reconsiderara las determinaciones de hechos número 17 y 18, en vista de que el Código Civil del 2020 no era aplicable a este caso. Por otro lado, el Consejo de Titulares esgrimió que del testimonio del perito Ángel Casto Pérez Vega surgió que las partidas solicitadas por los daños en las ventanas de madera, el reemplazo de las losetas, las barreras de vapor autonivelante para pisos, los gabinetes superiores de la cocina y la pintura no estaban relacionadas con la inundación. Por ello, el Consejo de Titulares peticionó enmendar la compensación de daños de $91,684.24 a $58,937.24.

Así las cosas, el 20 de septiembre de 2024, el DACO emitió una *Resolución en reconsideración*.[6] En esta, declaró Ha Lugar parcialmente la reconsideración a los fines de disminuir la compensación en daños de $91,684.24 a $58,937.24. Sin embargo,

---

[5] *Íd.*, Anejo 20, págs. 286-300.
[6] *Íd.*, Anejo 21, págs. 301-306. Archivada el 24 de septiembre de 2024. Enviada por correo postal el 25 de septiembre de 2024.

consignó que la concesión de $3,000.00 en concepto de honorarios de abogados quedó inalterada. El foro administrativo apercibió que las partes tenían un término de treinta (30) días desde la notificación para presentar una revisión judicial ante el Tribunal de Apelaciones.

No conforme, el 15 de octubre de 2024, North East presentó una *Moción solicitando reconsideración a resolución en reconsideración*. Mediante esta, peticionó al DACo reconsiderar la determinación de modificar la cuantía otorgada por concepto de daños a $58,937.24.[7] La parte recurrida indicó que la suma de los daños provenientes de las inundaciones producto del sistema pluvial colapsado era $85,184.24.

El 17 de octubre de 2024, el Consejo de Titulares presentó una *Réplica a "Moción solicitando reconsideración a resolución en reconsideración"*.[8] En esta, planteó que la *Resolución en reconsideración* quedó sometida sin la oposición de North East, al concebir que la *Moción solicitando reconsideración a resolución en reconsideración* del 15 de octubre de 2024 constituyó una oposición a su *Moción en solicitud de reconsideración*, presentada el 11 de septiembre de 2024.

Por su parte, el 29 de octubre de 2024, la parte recurrida presentó una *Moción réplica a la réplica "moción solicitando reconsideración a resolución en reconsideración"*.[9] En esta, sostuvo que en este caso aplicaba la presentación de una segunda moción de reconsideración, a tenor con lo establecido por el Tribunal Supremo en casos como *Marrero Rodríguez v. Colón Burgos*, 201 DPR 330 (2018) y *AFI v. Carrión Marrero y otros*, 209 DPR 1 (2022). A saber, North East puntualizó que al DACo alterar sustancialmente el

---

[7] Apéndice de la *Moción solicitando desestimación*, págs. 4-12.
[8] *Íd.*, págs. 13-15.
[9] *Íd.*, págs. 16-19.

dictamen original, podía solicitar una reconsideración dirigida a impugnar los nuevos pronunciamientos del foro administrativo.

Previamente, en particular el 23 de octubre de 2024, el Consejo de Titulares presentó un recurso de revisión judicial ante este Tribunal y esbozó que el DACo incidió en cometer los siguientes errores:

> ERRÓ EL DACO Y ABUS[Ó] DE SU DISCRECIÓN AL DETERMINAR QUE LA CAUSA DE LOS DAÑOS RECLAMADOS EN LA QUERELLA FUE LA INUNDACIÓN DE SEPTIEMBRE DE 2019. DEL EXPEDIENTE SURGE [QUE LA] RECLAMACIÓN Y "ASSESSMENT" NOTIFICADA POR LA QUERELLANTE-APELADA PARA EL AÑO 2018 EN LA CUAL LA QUERELLANTE-APELADA RECLAMA LOS MISMOS DAÑOS RECLAMADOS EN LA QUERELLA[,] PERO EN AQUELLA OCASIÓN ALEGÓ QUE FUERON OCASIONADOS POR EL HURACÁN MARÍA.

> ERRÓ EL DACO Y ABUS[Ó] DE SU DISCRECIÓN AL CUANTIFICAR LOS DAÑOS YA QUE DEL EXPEDIENTE ADMINISTRATIVO SURGE QUE LAS BASES DE LA PRUEBA PERICIAL PARA VALORAR LOS DAÑOS [SON] INSUFICIENTE[S] Y/O DEFECTUOSA[S].

> ERRÓ EL DACO Y ABUS[Ó] DE SU DISCRECIÓN AL DETERMINAR QUE LA QUERELLADA-APELANTE ACTUÓ CON TEMERIDAD E IMPONER HONORARIOS LEGALES ASCENDENTES A $3,000.00[,] YA QUE EL CONSEJO DE TITULARES NO AUTORIZÓ EL DESEMBOLSO DE FONDOS PORQUE TENÍA CONOCIMIENTO DE QUE LA QUERELLANTE-APELADA HABÍA RECLAMADO ESTOS DAÑOS ESBOZADOS EN LA QUERELLA PARA EL AÑO 2018 Y EN AQUEL MOMENTO ADMITIÓ QUE FUERON CONSECUENCIA DEL HURACÁN MARÍA. POR LO CUAL, LA RECLAMACIÓN TIENE VISOS DE FRAUDE, ENTRE OTROS.

> ERRÓ EL DACO AL UTILIZAR COMO FUNDAMENTO PARA LA CONCESIÓN DE DAÑOS EL ARTÍCULO 1536 DEL CÓDIGO CIVIL DE 2020, A UNA CONTROVERSIA QUE LOS HECHOS OCURRIERON ENTRE EL 2017 Y 2019.

Como primer señalamiento de error, el Consejo de Titulares aseveró que la señora Astrid Díaz Vega admitió que, a consecuencia del huracán María, el 27 de marzo de 2018 reclamó los mismos daños expuestos en la *Querella* ante a la Administración del Condominio. Asimismo, planteó que el ingeniero Javier Rodríguez Mejías certificó que el huracán María ocasionó los daños del apartamento de North East. Por ello, señaló que al tratarse de un evento de fuerza mayor, la Administración, la Junta de Directores ni el Consejo de Titulares del Condominio Río Mar II no eran responsables de los daños sufridos.

Como segundo señalamiento de error, la parte recurrente especificó que esta Curia apelativa debía revocar las determinaciones de hechos número 18 al 24 y 30 al 42, ya que los peritos no utilizaron cotizaciones, tasaciones, ni pruebas científicas para valorar los daños enlistados en sus informes periciales. Ante ello, el Consejo de Titulares afirmó que las bases de la opinión pericial eran insuficientes, defectuosas y contradictorias entre sí, máxime que no existió un descubrimiento de prueba ni el arquitecto Víctor Vega Sanabria estuvo disponible para ser contrainterrogado, por lo que entendió que el expediente administrativo carecía de prueba suficiente para valorar los daños. Así, la parte recurrente señaló que no se podía conceder compensación alguna a favor de North East.

Como tercer señalamiento de error, el Consejo de Titulares manifestó que el DACo incidió al otorgar una partida de $3,000.00 por honorarios de abogados a favor de North East, ya que no autorizó el desembolso de los fondos al conocer que los daños reclamados fueron a consecuencia del huracán María. Por ello, alegó que la *Querella* tenía visos de fraude. Por último, como cuarto error, la parte recurrente subrayó que el foro administrativo incidió al aplicar el Código Civil del 2020 a una controversia ocurrida entre los años 2017 al 2019.

El 6 de noviembre de 2024, North East presentó una *Moción solicitando desestimación*. Mediante esta, concretó que el DACo emitió una *Resolución en reconsideración* que cambió sustancialmente la determinación original, sin apercibir a las partes sobre su derecho a solicitar reconsideración. En consecuencia, solicitó una reconsideración que aún continúa pendiente ante el DACo, sin que el Consejo de Titulares comunicara dicho trámite a este foro judicial. Por lo anterior, indicó que este Tribunal estaba privado de jurisdicción y peticionó desestimar este recurso por presentarse prematuramente.

Por su parte, el 20 de noviembre de 2024, el Consejo de Titulares presentó una *Moción en oposición a solicitud de desestimación*. En esta, esgrimió que el DACo no modificó sustancialmente la determinación original al mantener inalteradas las determinaciones de hecho y las conclusiones de derecho. Por otro lado, precisó que la parte recurrida no se opuso oportunamente a la *Moción de reconsideración* que presentó ante el DACo, razón por la cual el foro administrativo resolvió la controversia sin contar con la posición de North East. Ante ello, el Consejo de Titulares adujo que la parte recurrida pretendió oponerse a su *Moción de reconsideración* a destiempo. En la alternativa, planteó que han transcurrido más de quince (15) días desde que North East presentó la *Moción solicitando reconsideración a resolución en reconsideración* sin que el DACo se haya expresado, por lo que concibió que la misma se denegó de plano, a tenor con la Regla 29.5 del Reglamento de Procedimientos Adjudicativos del DACo, Reglamento Núm. 8034, Departamento de Estado, 14 de junio de 2011. Por ello, el Consejo de Titulares percibió que la parte recurrida actuó contrario a derecho al solicitar la desestimación de este recurso.

El 6 de diciembre de 2024, el Consejo de Titulares presentó una *Moción notificando incumplimiento de la parte recurrida-apelada*. Mediante esta, expresó que al North East no expresarse sobre los méritos de este recurso dentro del término concedido, procedía atender el mismo sin el beneficio de su comparecencia. Por su parte, el 16 de diciembre de 2024 North East presentó un escrito en el que reiteró su solicitud de desestimación. También, solicitó que se ordenase a DACO que notificase adecuadamente la Resolución en Reconsideración. En la alternativa, solicitó término para presentar su alegato en los méritos, una vez se presentase la transcripción de la prueba oral.

En atención al tracto antes reseñado, procedemos a exponer la normativa jurídica atinente a este recurso.

## II.

### A. Jurisdicción

La jurisdicción es el poder o la autoridad que posee un tribunal para resolver los casos y las controversias que se presentan ante sí. *R&B Power Inc. v. Junta de Subasta A&G*, 2024 TSPR 25, 213 DPR ___ (2024). *Miranda Corrada v. DDEC et al.*, *Miranda Corrada v. DDEC et al.*, 211 DPR 738, 745 (2023); *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 394 (2022); *Adm. Terrenos v. Ponce Bayland*, 207 DPR 586, 600 (2021); *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89 (2020). Por ello, para que un tribunal pueda adjudicar un caso, debe poseer tanto jurisdicción sobre la materia como sobre las partes litigiosas. *R&B Power Inc. v. Junta de Subasta A&G*, *supra*; *Cobra Acquisitions v. Mun. Yabucoa et al.*, *supra*; *Shell v. Srio. Hacienda*, 187 DPR 109 (2012). Por ello, el foro adjudicativo tiene la responsabilidad indelegable de examinar, en primera instancia, su propia jurisdicción. *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 268 (2018). En específico, "es deber ministerial de todo tribunal, cuestionada su jurisdicción por alguna de las partes o incluso cuando no haya sido planteado por éstas, examinar y evaluar con rigurosidad el asunto jurisdiccional, pues éste incide directamente sobre el poder mismo para adjudicar una controversia". *Íd.* En tal virtud, la jurisdicción es el primer factor que el foro adjudicativo debe considerar. *R&B Power Inc. v. Junta de Subasta A&G*, *supra*; *Torres Alvarado v. Madera Atiles*, 202 DPR 495, 500 (2019). Es decir, el asunto jurisdiccional es privilegiado y debe atenderse preferentemente. *Ruiz Camilo v. Trafon Group, Inc.*, *supra*. Pues, un tribunal debe ser un celoso guardián de su jurisdicción. *Íd.*

Una de las instancias en la que un foro adjudicativo puede carecer de jurisdicción es cuando el recurso se presentó tardío o

prematuramente, puesto que "adolece del grave e insubsanable defecto de privar de jurisdicción al tribunal al cual se recurre". *Íd.,* pág. 269. En tal eventualidad, la presentación del recurso carece de eficacia y no produce efecto jurídico, toda vez que aún no ha nacido la autoridad judicial o administrativa para acogerlo. *Íd.* Así las cosas, el tribunal sólo tiene jurisdicción para así declararlo y desestimar el caso, sin entrar en los méritos de la controversia. *Cobra Acquisitions v. Mun. Yabucoa et al., supra,* pág. 395; *Lozada Sánchez et al. v. JCA, supra; Carattini v. Collazo Syst. Analysis, Inc.,* 158 DPR 345, 355 (2003). "Esto es, procede la inmediata desestimación del recurso apelativo según lo ordenado por las leyes y los reglamentos para el perfeccionamiento de estos recursos". *Ruiz Camilo v. Trafon Group, Inc., supra.* Pues, los tribunales carecen de discreción para asumir jurisdicción donde no la hay. *Íd.*

### B. Revisión judicial

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* Ley Núm. 38-2017, según enmendada, 3 LPRA secs. 9671 *et seq.* (LPAUG), dispone un procedimiento uniforme para la revisión judicial de una adjudicación administrativa. *Gobierno PR v. Torres Rodríguez,* 210 DPR 891, 907 (2022); *Cordero Vargas v. Pérez Pérez,* 198 DPR 848, 857 (2017). El objetivo de este recurso es asegurar que el organismo administrativo actuó de conformidad con el poder delegado y la política legislativa. *OEG v. Martínez Giraud,* 210 DPR 79, 88 (2022); D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme,* 3ra ed., Bogotá, Forum, 2013, pág. 669. Por virtud del referido recurso, el Tribunal de Apelaciones puede revisar las decisiones, órdenes y resoluciones finales emitidas por un organismo o una agencia administrativa. Artículo 4.006(c) de la *Ley de la Judicatura,* Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 24y. A saber, de ordinario, la revisión judicial procede una vez se adjudiquen todas las controversias

pendientes ante la agencia y concluyan todos los trámites administrativos. *Miranda Corrada v. DDEC et al., supra,* pág. 746. En tal virtud, a pesar de que las doctrinas de finalidad y agotamiento de los remedios delimitan el momento adecuado para la revisión judicial de una determinación administrativa, el tribunal debe examinar las disposiciones de la ley especial que rige cada caso. *Íd.*

En lo que nos concierne, en la Regla 29 del Reglamento de Procedimientos Adjudicativos, *supra,* R. 29, se dispone sobre la reconsideración y revisión judicial de una determinación del DACo. La referida regla establece lo que sigue:

> 29.1. La parte adversamente afectada por una resolución u orden parcial interlocutoria o final podrá solicitar reconsideración. La solicitud de Reconsideración deberá ser presentada y recibida en el Departamento, además de notificada a la parte contraria, dentro del término jurisdiccional de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden. El promovente de la moción de reconsideración acreditará en el Departamento evidencia de haber notificado a la parte contraria, lo cual constituirá un requisito de cumplimiento estricto. El Departamento dentro de los quince (15) días de haberse presentado dicha solicitud podrá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión judicial comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos [quince (15)] días, según sea el caso. Si se tomare alguna determinación en su reconsideración, tendrá que completarse dentro de los noventa (90) días jurisdiccionales y el término para solicitar revisión judicial de treinta (30) días empezará a contarse desde la fecha en que se archiva en autos una copia de la notificación de la resolución de la agencia resolviendo definitivamente la moción de reconsideración. Si el Departamento luego de acoger una moción de reconsideración, dejare de tomar alguna acción sobre ella dentro de los noventa (90) días de haber sido radicada perderá jurisdicción sobre la misma y el término para solicitar la revisión judicial empezará a contarse a partir de la expiración de dicho término de noventa (90) días salvo que la agencia, por justa causa, prorrogue el tiempo para resolver, por un periodo que no excederá de treinta (30) días.
>
> 29.2. El Departamento podrá reconsiderar sus resoluciones a iniciativa propia antes de que expire el término para radicar revisión judicial.
>
> 29.3. Una parte no conforme con la resolución de su solicitud de Reconsideración podrá solicitar la revisión judicial de la orden cuya Reconsideración solicita mediante el cumplimiento de los requisitos establecidos por la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, Ley de Procedimiento Administrativo Uniforme.
>
> 29.4. La radicación de una solicitud de revisión judicial no suspenderá los efectos de una resolución final del Departamento. La decisión del Secretario, del Funcionario o

Panel de Jueces, permanecerá en todo su vigor y efecto hasta tanto no haya una decisión del Tribunal del Circuito de Apelaciones dejando sin efecto la misma.

29.5. El Departamento mantendrá un expediente oficial del procedimiento adjudicativo llevado a cabo a tenor con lo requerido por la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, Ley de Procedimiento Administrativo Uniforme. Cualquier parte podrá solicitar una copia certificada del expediente y de la transcripción de la vista, excepto las notas del Juez, Secretario o Panel de Jueces, mediante el pago de los cargos correspondientes. En la alternativa, la parte solicitante podrá contratar un transcriptor de [récord] certificado, el cual el Departamento le dará acceso a una copia de la grabación para transcribir la misma, mediante el cargo correspondiente. En este caso el transcriptor someterá una copia certificada y juramentada ante notario a los efectos que la transcripción es una fiel y exacta de la grabación entregada por el Departamento. El Departamento mantendrá el original de las grabaciones y un registro de las copias entregadas. El Departamento podrá modificar la forma de transcribir a tenor con los cambios tecnológicos y de digitalización que estén disponibles para agilizar los procesos.

### C. Segunda reconsideración

En el ámbito procesal civil, el Tribunal Supremo resolvió que una segunda moción de reconsideración interrumpe el término para recurrir al Tribunal de Apelaciones si (1) el dictamen original se alteró sustancialmente en la primera reconsideración, independientemente de quien la presentó y (2) la parte exponga los hechos o el derecho a reconsiderarse y las alteraciones sustanciales producto de la primera reconsideración o las nuevas determinaciones de hechos o conclusiones de derecho. *Marrero Rodríguez v. Colón Burgos, supra*, págs. 341-342. A saber, "cuando el tribunal altera sustancialmente una determinación anterior, la parte afectada puede impugnar las alteraciones siempre y cuando su reclamo vaya dirigido a los nuevos pronunciamientos". *AFI v. Carrión Marrero y otros, supra*, pág. 5. Estos requisitos van dirigidos a evitar la extensión indefinida del término para recurrir en revisión judicial a través de la presentación de mociones de reconsideración por iguales fundamentos. *Íd.*; *Báez Figueroa v. Adm. Corrección*, 209 DPR 288, 304 (2022).

Evaluada la normativa jurídica pertinente a este recurso, procedemos a aplicarla a los hechos de este caso.

**III.**

Luego de examinar sosegadamente la *Resolución en reconsideración* emitida el 20 de septiembre de 2024, se puede apreciar que el DACo alteró sustancialmente la determinación original. Pues, tras originalmente conceder una suma de $91,684.24 por concepto de daños a favor de North East, dicho foro administrativo redujo la cantidad a $58,937.24. En vista de lo anterior, el 15 de octubre de 2024, la parte recurrida ejerció su derecho de solicitar reconsideración, trámite que se encuentra pendiente ante el foro administrativo. Por lo anterior, la presentación de la *Moción solicitando reconsideración a resolución en reconsideración* de North East tuvo un efecto interruptor sobre el término para las partes de este caso recurrir en revisión judicial. Así las cosas, este Tribunal de Apelaciones está impedido de atender las controversias planteadas en este recurso en sus méritos por presentarse prematuramente. De esta manera, al carecer de jurisdicción, procedemos a desestimar el presente recurso. Véase *Ruiz Camilo v. Trafon Group, Inc.*, *supra*; *Cobra Acquisitions v. Mun. Yabucoa et al.*, *supra*; *Lozada Sánchez et al. v. JCA*, *supra*, y *Carattini v. Collazo Syst. Analysis, Inc.*

Debemos subrayar que el Consejo de Titulares omitió informar a este Tribunal sobre esta incidencia procesal al presentar el recurso de revisión judicial, aun cuando la misma incidió trascendentalmente sobre nuestra jurisdicción para atender el recurso, a tenor con la normativa jurídica prevaleciente en nuestro ordenamiento jurídico. Véase *Marrero Rodríguez v. Colón Burgos* y *AFI v. Carrión Marrero y otros*. Véase también la Regla 59 (C)(1)(c) y (d) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B.

**IV.**

Por las razones que anteceden, se desestima el recurso por presentarse prematuramente. Procede que DACO adjudique el

asunto pendiente ante su consideración o en un término razonable notifique nuevamente su Resolución en Reconsideración, apercibiendo en la misma a las partes de su derecho reconocido a solicitar reconsideración debido a la variación significativa allí dispuesta. Todo ello, cónsono con la jurisprudencia antes citada en la presente determinación.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones